UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: September 27, 2017
Time: 10:00 a.m.

--------------------------------------------------------------------------------x

In re:

       BENJAMIN P BONGIOVI

Chapter 13
Case No.: 17-22520-rdd

                  Debtors.

--------------------------------------------------------------------------------x

## NOTICE OF MOTION AND ORDER

PLEASE TAKE NOTICE, that upon the annexed motion and order of NIERODA & NIERODA, P.C., Attorneys for the Debtor, BENJAMIN P BONGIOVI, with offices locates at 320 Carleton Avenue, Suite 6400, Central Islip, New York, sworn to on the 28th day of August, 2017, and upon all prior proceedings hereto had herein, the undersigned will move before the HONORABLE ROBERT D. DRAIN, of the United States Bankruptcy Court for the Southern District of New York at the courthouse located at at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York on September 27, 2017, or as soon thereafter as counsel can be heard, for signature of the annexed Order granting permission for the sale of Debtors' property, and for such other and further relief as this Court deems just and proper.

PLEASE TAKE FURTHER NOTICE, that objections to the attached application and order, if any, must be filed with the Bankruptcy Court within five (5) business days prior to the return date of this application.

Dated: Central Islip, New York
       August 28, 2017

                            NIERODA & NIERODA, P.C.

                            By:*S/ DANIEL W. NIERODA, JR., ESQ.*
                            DANIEL W. NIERODA, JR., ESQ.
                            Attorneys for Debtors
                            320 Carleton Avenue, Suite 6400
                            Central Islip, New York 11722
                            (631) 232-9000

TO:    The Parties on the Attached Service List

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: September 27, 2017
Time: 10:00 a.m.

--------------------------------------------------------------------------------x

In re:

          BENJAMIN P BONGIOVI

Chapter 13
Case No.: 17-22520-rdd

                             Debtors.

--------------------------------------------------------------------------------x

## **MOTION TO ALLOW SALE OF DEBTORS' PROPERTY**

TO:    THE HONORABLE ROBERT D. DRAIN, U.S. BANKRUPTCY JUDGE

       The motion of the Debtors, by their attorneys, NIERODA & NIERODA, P.C, alleges as follows:

1.     The Debtor herein filed a Chapter 13 Bankruptcy Petition on April 5, 2017.

2.     The Debtors' Chapter 13 Plan has been filed and awaits confirmation.

3.     The Debtor, as of the date of this application, is current under the terms of the Chapter 13 Plan.

4.     The Debtor and his non-filing spouse have entered into a Contract of Sale in the amount of $368,500.00 which will pay off the Debtors' current mortgage obligation as well as the amount to creditors as proposed under the Debtor's filed Chapter 13 Plan.

5.     The address of the property to be sold is 190 Southern Blvd., Nesconsett, New York 11767, and it was the Debtors' primary residence until the divorce action was commenced between Debtor and his non-filing spouse.

6.     A copy of the Contract of Sale herein is annexed hereto as Exhibit "A."

7.     There is currently a mortgage on the property held by PHH Mortgage Corporation in the approximate amount of $208,996.87 (as per claim #5 filed with this Court on May 16, 2017.

8.     The real estate taxes are escrowed by the current first mortgage and are up to date.

9.      The plan as filed did not anticipate a future sale of the property.

10.     This motion in no way adversely affects creditors.

11.     The Debtors, therefore, respectfully request an Order granting permission for the sale.

WHEREFORE, the Debtors pray that an Order be made and entered herein granting permission for the sale.

Dated: Central Islip, New York
August 28, 2017

NIERODA & NIERODA, P.C.

By:_S/ DANIEL W. NIERODA, JR., ESQ._
DANIEL W. NIERODA, JR., ESQ.
Attorneys for Debtors
320 Carleton Avenue, Suite 6400
Central Islip, New York 11722
(631) 232-900

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
In re:

               BENJAMIN P BONGIOVI

                             Debtors.

Chapter 13
Case No.: 17-22520-rdd

--------------------------------------------------------------------------------x

**<u>ATTORNEY AFFIRMATION IN SUPPORT</u>**

STATE OF NEW YORK)

                                 )

COUNTY OF SUFFOLK)

    <u>Daniel W. Nieroda, Jr., Esq.</u>, being duly affirms and says:

    1.      I am an associate of NIERODA & NIERODA, P.C, attorneys for the Debtor

herein and as such, I am fully familiar with the facts and circumstances surrounding this matter.

    2.      I submit this Affirmation in support of Debtors' Motion for court approval of the

Sale of the Debtors' residence.

    3.      The Debtors herein filed a Chapter 13 Bankruptcy Petition on April 5, 2017.

    4.      The Debtors' Chapter 13 Plan has been filed and awaits confirmation.

    5.      The Debtor, as of the date of this motion, are current under the terms of the Chapter

13 Plan.

    6.      The Debtor and his non-filing spouse have entered into a Contract of Sale in the

amount of $368,500.00 which will pay off the Debtors' current mortgage obligation as well as the

amount to creditors as proposed under the Debtor's filed Chapter 13 Plan.

    7.      This Motion in no way adversely affects creditors.

    8.      The Debtors, therefore, respectfully request an Order granting permission for the

sale.

WHEREFORE, the Debtors pray for an Order granting permission for the sale.

Dated: Central Islip, New York
August 28, 2017

By:*S/ DANIEL W. NIERODA, JR., ESQ.*
DANIEL W. NIERODA, JR., ESQ.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
In re:

                               Chapter 13

        BENJAMIN P BONGIOVI          Case No.: 17-22520-rdd

                     Debtors.
--------------------------------------------------------------------------------x

## **ORDER**

       NIERODA & NIERODA, P.C, Attorneys for the Debtor herein, having moved for an

Order granting permission for the sale of Debtors' property, and no objection thereto having been

received by the Court at least five (5) days prior to September 27, 2017, after due notice thereof,

and it appearing that the Debtor elects to sell his real property, and sufficient reason and cause

appearing therefor, it is, on application of NIERODA & NIERODA, P.C., attorneys for

BENJAMIN P BONGIOVI, it is,

       ORDERED, that the motion of NIERODA & NIERODA, P.C., is granted in all respects,

and it is further,

       ORDERED, that the Debtors have been granted permission for the sale.


Dated: _____, 2017
       White Plains, New York


                        _____
                        HONORABLE ROBERT D. DRAIN, U.S.B.J.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
In re:

                Chapter 13

      BENJAMIN P BONGIOVI           Case No.: 17-22520-rdd

               Debtors.

--------------------------------------------------------------------------------x

## AFFIDAVIT OF MAILING

STATE OF NEW YORK)

COUNTY OF SUFFOLK)

    Barbara Nieroda, being duly sworn, deposes and says:

    That I am not a party to the action.

    On August 28, 2017, I mailed a copy of Notice of Motion and Order, Motion, Affirmation

in Support and Proposed Order, by placing the same in a properly postpaid envelope addressed to:

| | |
|---|---|
| United States Trustee<br>201 Varick Street #1006<br>New York, New York 10014 | PHH Mortgage Corporation<br>One Mortgage Way<br>MailStop SV01<br>Mt. Laurel, New Jersey 08054 |
| PHH Mortgage Corporation<br>c/o Shapiro DiCaro & Barak, LLC<br>One Huntington Quadrangle #3N05<br>Melville, New York 11747 | Jeffrey L. Sapir (JLS0938)<br>Chapter 13 Trustee<br>399 Knollwood Road<br>White Plains, New York 10603 |

                *S//Barbara Nieroda, Esq.*
                Barbara Nieroda

Sworn to before me this
28th day of August, 2017

 *S/Daniel W. Nieroda, Sr.*
Notary Public, State of New York
No.: 4985684
Commission Expires 9/23/2017

# EXHIBIT A

125—Residential contract of sale. 11-2000
*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

## NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.

This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

### Residential Contract of Sale

**Contract of Sale** made as of ~~July~~ *Aug* 9, 2017

BETWEEN    **BENJAMIN P. BONGIOVI**
Address:    10 Ridgeview Avenue, White Plains, New York 10606
Fed. I.D. No(s):                                                    hereinafter called "Seller" and

MATTHEW SHERWOOD
Address:    15 Pleasant Place, Farmingville, New York 11738
Fed. I.D. No(s):                                                    hereinafter called "Purchaser".

The parties hereby agree as follows:

**1.    Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:
Street Address:    **190 Southern Blvd., Nesconset, NY 11767**

Tax Map Designation: District: 0800 Section: 136.00 Block: 04.00 Lot: 020.000

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2.    Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins, **all as presently existing and all in "as is" condition.**

Excluded from this sale are furniture and household furnishings.

**3.    Purchase Price.** The purchase price is    **$368,500.00,**

The purchase price is payable as follows:
        (a)    on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):
                                                    **$18,425.00**
        (b)    ~~by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:~~            $        0
        (c)    ~~by a purchase money note and mortgage from Purchaser to Seller:~~                            $    -----0-----
        (d)    balance at Closing in accordance with paragraph 7:
                                                    **$350,075.00**

~~**4.    Existing Mortgage.** *(Delete if inapplicable)* If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
        ~~(a)    The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of          percent per annum, in monthly installments of $        which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on~~
        ~~(b)    To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.~~
        ~~(c)    If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the~~

~~amount in the escrow account to Seller at Closing.~~

~~(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more then 30 days before Closing, containing the same information.~~

~~(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

~~**5. Purchase Money Mortgage.** (*Delete if inapplicable*) If there is to be a purchase money mortgage as indicated in paragraph 3(e) above:~~

~~(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $_____ for its preparation.~~

~~(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than _____ percent per annum and the total debt service thereunder shall not be greater than $_____ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~

**6. Downpayment in Escrow.** (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at address Signature Bank, Garden City, New York until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a **non-interest** bearing account for the benefit of the parties. ~~If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon.~~ If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-

appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against of all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

**7. Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $ 1,000.00;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 1,000.00                    ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

**8. Mortgage Commitment Contingency.** (*Delete paragraph if inapplicable. For explanation, see Notes on Mortgage Commitment Contingency Clause.*) (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before 90 days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, in the amount of $294,800.00 for a term of at least  30 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment"

hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). ~~Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.~~

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) (*Delete this subparagraph if inapplicable*) Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller ~~within 5 business~~ days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If ~~Purchaser fails to give timely Notice of cancellation or~~ if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency

to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

**9. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**10. Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date ~~hereof~~ of closing by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters. ~~(b) (Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~

**11. Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract, subject to Seller obtaining a Court Order approving the sale; (*See Paragraph 4E of Rider*)

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, ~~except~~

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises

or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13. Insurable Title.** Seller shall give and Purchaser shall accept such title as: **any reputable title company licensed to do business in the State of New York** shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**14. Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser a bargain and sale with covenants against grantors' acts deed in proper statutory short form for recording, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated **and title shall be from a reputable title company of Purchaser's choice.** The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15. Closing Date and Place.** Closing shall take place at the office of: Seller's attorney located at 300 Garden City Plaza, 5th Floor, Garden City, New York 11530 at 10 a.m. o'clock on **or about** OCT 1 . 2017 or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of **Purchaser's lender in Nassau or Suffolk County only.**

**16. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a **single** family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical

systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

(i) taxes, water charges and sewer rents, on the basis of the ~~fiscal~~ lien period for which assessed; (ii) fuel **(including oil and propane, and rental fee for propane, if any)**; ~~(iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.~~

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

**20. Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as

requested to assist in clearing up these matters.

**21. The Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i)   If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c)   If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey; and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.** ~~If a title examination discloses judgments, bankruptcies or other returns against persons having names the same or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.~~ *Intentionally omitted*

**23. Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b)   If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and

the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b)   delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c)   with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than: **DOUGLAS ELLIMAN (Margaret Remhild)** ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28. Miscellaneous.** (a)   All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b)   Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c)   Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d)   The captions in this contract are for convenience or reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e)   This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f)   Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This Subparagraph shall survive Closing.

(g)   Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This

subparagraph shall survive Closing.

   (h)  This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

   (i)  If applicable, the complete and fully executed disclosure of

information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

**Continued on Riders I and II attached hereto.**

In Witness Whereof, **this** contract has been duly executed by the parties hereto.

Seller

_____
Benjamin Bongiovi

Purchaser

_____
Matthew Sherwood

Consented to:

_____
Denise A. Riesterer-Bongiovi

**Attorney for Seller:**
**Cathleen D. Allen, Esq.**
**Jaspan Schlesinger LLP**
**300 Garden City Plaza, 5th Floor**
**Garden City, New York 11530**
**Tel.: 516-393-8225  Fax: 516-393-8282**
**E-mail:  callen@jaspanllp.com**

**Attorney for Purchaser:**
**Dennis R. Wallach, Esq.**
**230 Hilton Avenue, Suite 14**
**Hempstead, New York 11550**
**Tel.: 516-292-0306**
**E-mail:  wallachlaw@aol.com**

Receipt of the downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

*JASPAN SCHLESINGER LLP, Escrowee*

BY: _____

Aug 08 17,10:57p    17-22520-rdd    Doc 13    Filed 08/31/17    Entered 08/31/17 13:38:06    Main Document
                         title search                Pg 15 of 25            9163998282           p.7

Aug 07 16 05:39p    Denise Riesterer                          631-246-5806          p.7

subparagraph shall survive Closing.

   (h)  This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

   (i)  If applicable, the complete and fully executed disclosure of

information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

**Continued on Riders I and II attached hereto.**

**In Witness Whereof,** this contract has been duly executed by the parties hereto.

Seller                                           Purchaser

_____                  _____
Benjamin Bongiovi                                Matthew Sherwood

Consented to:

_____
Denise A. Riesterer-Bongiovi

**Attorney for Seller:**                         **Attorney for Purchaser:**
**Cathleen D. Allen, Esq.**                      **Dennis R. Wallach, Esq.**
**Jaspan Schlesinger LLP**                       **230 Hilton Avenue, Suite 14**
**300 Garden City Plaza, 5th Floor**             **Hempstead, New York 11550**
**Garden City, New York 11530**                  **Tel.: 516-292-0306**
**Tel.: 516-393-8225  Fax: 516-393-8282**        **E-mail: wallachlaw@aol.com**
**E-mail: callen@jaspanllp.com**

Receipt of the downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

*JASPAN SCHLESINGER LLP, Escrowee*

*BY:* _____

RIDER I TO CONTRACT OF SALE DATED ~~JULY~~ *August 9*, 2017
BY AND BETWEEN BENJAMIN BONGIOVI, SELLER,
AND MATTHEW SHERWOOD, PURCHASER

----------------------------------------------------------------------------------------------------

29.  No representations or warranties except as herein provided shall survive the delivery of the deed.

30.  Purchaser represents, to the best of his knowledge after due inquiry, that his verifiable income is sufficient to qualify him for the mortgage being applied for and that he has never been adjudged bankrupt, has no current judgments, has no impending lawsuits and has not been denied a mortgage within the last two (2) years.  In addition, Purchaser represents that he has sufficient liquid assets available equaling the balance of the purchase price and customary closing costs and shall provide proof of same to the Seller and to the Lending Institution upon request.  *EXCEPT AS PROVIDED IN PARAGRAPH 16(e) OF THE PRE-PRINTED FORM OF THE CONTRACT, MS*

31.  *A* Purchaser represents that he has inspected the Premises and is thoroughly acquainted with its condition and agree to accept the Premises "AS IS" as of the date of this Contract.  It is understood and agreed that no representation, either expressed or implied, has been made as to the condition of the Premises and/or the fixtures therein.  Seller agrees that the heating, air conditioning, plumbing and electric systems (to the extent existing) and appliances will be in working order at the time of the closing, but this covenant shall not survive the closing of title.  *→ AND ROOF FREE OF LEAKS*  *MS*

32.  Supplementing Paragraph 21(b) of the printed form of this contract, any objections or exceptions to title must be furnished in writing to the Seller's attorneys at least ten (10) days prior to the title closing. *THE DELIVERY OF A TITLE EXAMINATION TO SELLER'S ATTORNEY Shall SATISFY THE NOTICE PROVISIONS THEREIN.*  *MS*

33.  Notwithstanding Paragraph 21(b) of the printed form of this contract, in the event there are any defects in the Seller's title, the Seller shall not be required to bring any action or proceeding or to otherwise incur any expense whatsoever to render the title insurable or marketable or to cure any objections to title.  In such event, Purchaser shall have the right to cancel as set forth in Paragraph 21(b) and receive a full refund of his down payment and Seller shall pay any net costs associated with the title report and survey upon Purchaser's presentation of invoices for the cost of same.

34.  In addition to the subject clauses contained in Paragraph 9 of the printed form of this contract, the Premises are sold and are to be conveyed, subject to the following:

> f.  Any state of facts which an accurate survey would show, provided said additional state of facts would not render title unmarketable or uninsurable, and provided, further, that any encroachments by buildings on adjoining premises or easement areas shall not be deemed an objection to title if a title insurer is willing to insure that such encroachment may remain undisturbed for as long as it stands; *WITHOUT ADDITIONAL PREMIUM IN EITHER THE FEE OR MORTGAGE POLICIES*  *MS*

g.  Public utility covenants, restrictions and easements of record;

h.  Any variations, less than one foot, between the record line with any fence or hedge; and

i.  Rights, if any, by any utility company to maintain, operate and repair any utility distribution system over and upon said Premises.

35.  It is agreed and understood that in the event of cancellation of this contract pursuant to its terms and refund of monies paid on account of this contract, this contract shall become null and void, and the lien created relating to monies paid on account of this contract shall also be null and void and Purchaser will then no longer have any lien whatsoever on the property which is the subject of this contract.

36.  Purchaser is represented by an attorney, and states that before Purchaser signed this contract, Purchaser discussed the terms and conditions with Purchaser's attorney, and Purchaser is fully familiar with the terms and conditions that are set forth herein.

37.  If payment of the down payment check given by the Purchaser to the Seller on the signing of this contract is not honored upon presentment, then, at Seller's option, this contract shall become null and void, and without any further force and effect.

38.  The acceptance of the deed by the Purchaser shall be deemed full compliance by the Seller with all of the provisions of this contract on the part of the Seller to be performed, excepting only any matters specifically provided herein to survive the closing.

39.  In the event a new survey is required, the cost of same shall be borne by the Purchaser.

Except as provided in paragraph 7 of the pre-printed form of the contract

40.  The payment due at closing is to be made by good unendorsed certified or bank check payable directly to the order of Seller or Seller's designee **on advance written notice to Purchaser's counsel** and drawn on a bank which is a member of the New York Clearinghouse.  **UNCERTIFIED CHECKS OF A FUNDING COMPANY OR ATTORNEY'S ESCROW ACCOUNT WILL NOT BE ACCEPTED BY SELLER ON ACCOUNT OF PROCEEDS DUE FROM PURCHASER.**

41.  Seller has not provided a Property Condition Disclosure Statement.  As such, the Purchaser agrees to receive a $500.00 credit at closing from the Seller and as a result of receiving the credit has waived the provisions of receiving Seller disclosures under the Property Condition Disclosure Act, 2001 N.Y. Laws 5339-A, effective March 1, 2002, and represents that Seller has obtained a home inspection or house engineering inspection or has had the opportunity to obtain one and is satisfied with the results.  The Purchaser hereby waives, releases, and discharges all rights, claims, and actions against the Seller and against the real property resulting or arising from the Property

Condition Disclosure Act.  In the event this clause is void or unenforceable, Seller's damages are limited to $500.00.  This provision shall survive the closing of title.

42.  Purchaser acknowledges that Purchaser had a right to a summary of heating and cooling bills under Section 17-103, Chapter 555 of the 1980 Laws of the State of New York, commonly known as the Truth in Heating Law.  Purchaser waives Purchaser's right to copies of bills or a summary of bills and acknowledges that Purchaser has not requested them in connection with this transaction.

*In the event THE SELLER is OTHERWISE READY, WILLING and ABLE TO CLOSE TITLE in ACCORDANCE WITH THIS CONTRACT, and*

43.  ~~The failure by~~ Purchaser to timely make any payment or payments due or to become due under this Contract, ~~or to timely comply with any term, covenant or condition of this Contract~~ *shall* constitutes a default of this Contract.

44.  Notwithstanding anything contained herein to the contrary, the Seller has filed bankruptcy under Chapter 13 and accordingly, this sale is expressly contingent upon the Seller's receipt of a Court Order approving the sale.  In the event that the Seller is not able to obtain such Court Order, the downpayment shall be returned to Purchaser and this contract shall be null, void and of no further force and effect. *By November 1, 2017*

45. To facilitate execution, this Contract may be executed in as many counterparts as may be convenient or required.  All counterparts shall collectively constitute a single instrument.  This Contract may be transmitted and/or signed by facsimile or e-mail transmission (e.g., "pdf" or "tif").  The effectiveness of any such documents and signatures shall have the same force and effect as manually-signed originals and shall be binding on all parties to the this Contract.

46.  If this Rider conflicts in any way with the printed form of Contract of Sale, this Rider shall control.

**IT IS UNDERSTOOD AND AGREED THAT THIS CONTRACT OF SALE AND RIDER ARE SUBMITTED TO PURCHASER WITH THE UNDERSTANDING THAT IT SHALL NOT BE CONSIDERED AN OFFER AND SHALL NOT BE BINDING UPON THE** *Either party* ~~**SELLER**~~ **IN ANY WAY UNTIL:  (i)  SELLER HAS DULY EXECUTED DUPLICATE ORIGINALS OF THIS CONTRACT OF SALE AND RIDER AND (ii) SELLER HAS DELIVERED SAID EXECUTED DUPLICATE ORIGINALS OF THIS CONTRACT OF SALE AND RIDER TO PURCHASER.**

IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the date and year first above written.

**SELLER:**

_____
Benjamin P. Bongiovi

**PURCHASER:**

_____
Matthew Sherwood

Consented to:

_____
Denise A. Riesterer-Bongiovi

**IN WITNESS WHEREOF,** the parties hereto have executed this Contract as of the date and year first above written.

**SELLER:**                                    **PURCHASER:**

_____                        _____
Benjamin P. Bongiovi                            Matthew Sherwood

Consented to:

_____
Denise A. Riesterer-Bongiovi

## RIDER II TO CONTRACT OF SALE DATED ~~JULY~~ August 9 __, 2017, BY AND BETWEEN BENJAMIN BONGIOVI, SELLER, AND MATTHEW SHERWOOD, PURCHASER

-----------------------------------------------------------------------

Disclosure of Information on Lead-Based Paint
and/or Lead-Based Paint Hazards (Home Sales)

LEAD WARNING STATEMENT

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

### SELLER'S DISCLOSURE

(a)   Presence of lead-based paint and/or lead-based paint hazards
      (check [i] or [ii] below):

[i]   _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

[ii]   __X__ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)   Records and reports available to the seller (check [i] or [ii] below):

[i]   _____ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

[ii]   __X__ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

### PURCHASER'S ACKNOWLEDGMENT
(check all that are applicable)

(c)   _ Purchaser has received copies of all information listed above.
(d)   _ Purchaser has received the pamphlet Protect Your Family from Lead in Your Home.
(e)   Purchaser has (check [i] or [ii] below):
      [i]_ ___ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
      [ii] _ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

AGENT'S ACKNOWLEDGMENT (check)

(f)      N/A   Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

CERTIFICATION OF ACCURACY

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

SELLER:

_____
Benjamin P. Bongiovi

PURCHASER:

_____
Matthew Sherwood

Consented to:

_____
Denise A. Riesterer-Bongiovi

## AGENT'S ACKNOWLEDGMENT (check)

(f)    N/A   Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

## CERTIFICATION OF ACCURACY

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

**SELLER:**                         **PURCHASER:**

_____        _____

Benjamin P. Bongiovi               Matthew Sherwood

Consented to:

Denise A. Riesterer-Bongiovi

SECOND RIDER ATTACHED TO AND FORMING PART OF THE CONTRACT OF SALE DATED August   9   , 2017 BY AND BETWEEN BENJAMIN P. BONGIOVI, as Seller and MATTHEW SHERWOOD, as Purchaser, covering the premises known as 190 Southern Blvd., Nesconset, New York

(1)   The Seller and Purchaser herein agree that in the event of a conflict between the printed form of the Contract of Sale, the Rider and this Second Rider, then and in that event, the language of this Second Rider shall prevail as to the intent of the parties.

(2)   In the event that the lender from whom a mortgage commitment is issued, fails or refuses to fund the loan for any reason whatsoever, **except for the willful acts of the Purchaser,** then and that event, this agreement shall be deemed canceled, null and void and upon the prompt return of the Purchaser's contract deposit, the parties shall have no further rights or obligations under this agreement.

(3)   A conditional commitment issued upon conditions that the Purchasers are unable to reasonably satisfy shall not be considered a firm mortgage commitment. Notwithstanding the above, a condition requiring the sale of any real property currently owned by Purchasers shall be considered satisfied as and between the parties.

(4)   At the time of closing or possession, whichever is later, the premises,shall be delivered vacant and broom clean, lot (including outside areas/yards) free from debris, and free from all tenancies. Purchasers shall have the right to inspect the premises at reasonable times and upon reasonable notice, as well as within twenty-four (24) hours prior to closing.

(5)   The Seller represents, under penalties of perjury, that he is a Citizen of the United States of America or a legal resident (green card holder), not a foreign national, and not subject to withholding of any part of the proceeds of sale by the transferee, pursuant to Section 1445 of the Internal Revenue Code.

(6)   All notices required to be served upon any of the parties to this agreement, and hereinbefore set forth, shall be served in writing, addressed directly to the party or his or her attorney, by certified or registered mail, return receipt requested, by personal service or by email, provided receipt of same is acknowledged by the recipient of such notice.

(7)   It shall be a condition of Purchaser's obligation to close hereunder that at closing, all material representations of the Seller shall be recertified as true and accurate as of the date of closing.

(8).   An executed copy of this copy agreement sent as a PDF file via email shall be considered as originally executed by the parties for all purposes. This agreement may also be signed in counterparts, which taken together, shall be considered a fully-executed agreement.


BENJAMIN P. BONGIOVI

MATTHEW SHERWOOD